No. 24-11100

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

APM Terminals Mobile, LLC,

*Plaintiff-Appellee,*

v.

International Longshoremen's Association, Local 1410,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Southern District of Alabama, Southern Division
Case No. 1:23-cv-00332-C – William E. Cassady
United States Magistrate Judge, Southern District of Alabama

_____

## APPELLANT'S BRIEF

_____

Richard P. Rouco
George N. Davies
QUINN, CONOR, WEAVER
DAVIES & ROUCO, LLP
2 – 20th Street North, Suite 930
Birmingham, AL  35203
 (205) 870-9989
rrouco@qcwdr.com
gdavies@qcwdr.com

## APPELLLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellant certifies that the following is a complete list of the persons and entities who have an interest in the outcome of this case:

1. APM Terminals Mobile, LLC, Appellee

2. International Longshoremen's Association, Local 1410, AFL-CIO, Appellant

3. Magistrate Judge William E. Cassady

4. George N. Davies, Counsel for Appellant

5. Anne Laurie McClurkin, Counsel for Appellee

6. Maynard Nexsen, PC, Counsel for Appellant

7. Quinn, Connor, Weaver, Davies & Rouco, LLP, Counsel for Appellee

8. Richard P. Rouco, Counsel for Appellee

Pursuant to Eleventh Circuit Rule 26.1-1, 26.1-2, 26.1-3, and 28-1(b), and Fed. R. App. P. 261, the Appellant identified the following subsidiaries, conglomerates, affiliates and parent corporations:

1. International Longshoremen's Association, AFL-CIO

## CORPORATE DISCLOSURE STATEMENT

Appellant, the International Longshoremen's Association, Local 1410, AFL-CIO, makes the following disclosures:

1. Non-Governmental Parties to this Action: The International Longshoremen's Association, Local 1410, AFL-CIO.

2. Parent Corporations or Entities: International Longshoremen's Association, AFL-CIO.

3. Publicly Held Company that owns 10% or More of Party's Stock: None.Parties' General Nature and Purpose: The International Longshoremen's Association, Local 1410, AFL-CIO ("Local 1410" of "Union"), is a labor organization within the meaning of Section 301 of the Labor-Management Relations Act of 1947. 29 U.S.C. §185, and is an unincorporated association whose members have no ownership interest in the association. Local 1410 is a diverse union representing longshoremen for the purposes of collective bargaining in the port of Mobile, Alabama.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, Local 1410, respectfully requests that this Court hear oral argument in this case.  The appeal raises important questions regarding how federal courts should interpret and apply settled law regarding the arbitrability of disputes that arise under collective bargaining agreements.  This appeal also implicates the continuing public interest regarding the creation and maintenance of industrial peace.  Further this appeal provides the Court the opportunity to review, clarify and strengthen the legal rules that parties are entitled to have industrial disputes resolved expeditiously by the means and by the arbitrators agreed to pursuant to collectively bargained agreements.

## TABLE OF CONTENTS

APPELLLANT'S CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT .................................................. 1

CORPORATE DISCLOSURE STATEMENT ................................................ 2

STATEMENT REGARDING ORAL ARGUMENT ........................................ i

TABLE OF CONTENTS ............................................................................. ii

I.    STATEMENT OF JURSIDICTION ........................................................ 1

II.   STATEMENT OF THE ISSUES ............................................................ 3

III.  STATEMENT OF THE CASE ............................................................... 4

A.  Nature of the Case ................................................................... 4

B.  Statement of the Facts ............................................................. 5

C.  Relevant Collective Bargaining Agreement Provisions ............ 7

D.  Procedural History ..................................................................11

E.  Standard of Review ..................................................................12

IV.  SUMMARY OF ARGUMENT .............................................................13

V.  ARGUMENT .....................................................................................17

A.  Federal Labor Policy Favors Settling Disputes Through the    Parties
Agreed Upon Grievance and Arbitration Procedure ......................17

B.  The District Court's Order Denying the Motion to Compel  Arbitration
Should be Reversed because it Fails to Give Effect to  the CBA's Broad and
Mandatory Arbitration Agreement and  Ignores the Parties' Clear
Distinction Between Judicial Actions for  Damages and Judicial Actions for
Injunctive Relief. ................................................................................19

C.  The District Court's denial of the motion to compel arbitration    should
be reversed because it conflicts with the well settled     presumption favoring
arbitration; a presumption that can only be   overcome with the most
forceful evidence of an intent to exclude a   particular dispute from the
scope of a broad and mandatory    arbitration agreement. ..........................29

VI.  CONCLUSION .................................................................................38

CERTIFICATE OF COMPLIANCE ..............................................................40

CERTIFICATE OF SERVICE ......................................................................41

# TABLE OF AUTHORITIES

## Cases

*Aluminum, Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*,
    991 F.2d 1545 (11th Cir. 1993)...........................................................................17

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)………………………………………...…18, 35, 36, 38

*Blake Constr. Co. v. Laborers' International Union*,
    511 F.2d 324 (D.C. Cir. 1975) ...........................................................................24

*Dasher v. RBC Bank* (USA), 745 F.3d 1111 (11th Cir. 2014) ..............................35

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ....................................27

*Drake Bakeries, Inc.* v. *Bakery & Confectionery Workers*,
    370 U.S. 254 (1962)………………………………………………………….37

*Friedrich v. Local Union No. 780, IUE–AFL–CIO–CLC*,
    515 F.2d 225 (5th Cir. 1975)...........................................................................21

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010)……….. ………………………………….…19, 34, 35

*Howard Electric Co. v. IBEW, et al.*, 423 F.2d 164 (9th Cir. 1970).......................25

*IBEW Sys. Council U-4 v. Fla. Power & Light Co.*,
    580 Fed. Appx. 868 (11th Cir. 2014) .................................................................12

*IBEW Sys. Council U-4 v. Fla. Power & Light Co.*,
    627 Fed. Appx. 898 (11th Cir. 2015) ................................................. 19, 33, 35, 38

iii

*International Brotherhood of Teamsters, Local 413 v. The Kroger Co*.
  2021 Fed. Appx. 0541, 2021 U.S. Ap. Lexis 35077 *8 (6th Cir. 2021) ..............35

*International Union v. Cummins, Inc*., 434 F.3d 478 (6th Cir. 2006) ....................35

*ITT World Commc'ns, Inc. v. Commc'ns Workers of Am.*,
  422 F.2d 77 (2d Cir. 1970) ...............................................................................36

*Jones v. Waffle House, Inc.*, 866 F.3rd 1257 (11th Cir. 2017) ..............................27

*Kwok v. Delta Airlines Inc.*, 578 F. Appx. 898 (11th Cir. 2014)...........................31

*LG Electronics, Inc. v. Wi-Lan USA, Inc.*,
  623 Fed. Appx. 568 (2nd Cir. 2015)..................................................................27

*Molinos Valle Del Cibao, C. por A. v. Lama*,
  633 F.3d 1330 (11th Cir. 2011) .........................................................................12

*Musnick v. King Motor Co. of Fort Lauderdale*,
  325 F.3d 1255 (11th Cir. 2003) .........................................................................12

*Nolde Bros. v. Bakery & Confectionery Workers Union*,
  430 U.S. 243 (1977).............................................................................................17

*Paladino v. Avnet Technologies*, 134 F. 3d 1054 (11th Cir. 1998) .......................31

*Pilot Freight Carriers Inc. v. Local 391, IBT*,
  Nos. C-215-WS-72, C-219-WS-72, C-74-69-WS, C-75-76-WS.,
  1977 U.S. Dist. LEXIS 17827, at *4 (M.D.N.C. Jan. 19, 1977) ........................28

*Pilot Freight Carriers Inc.*, 659 F.2d 1252 (4th Cir. 1981) ......................28, 29, 36

*Sysco Indianapolis LLC v. Teamsters Local 135*,
  No. 23-1718, 2024 U.S. App. LEXIS 20974 (7th Cir. August 20, 2024)...........38

*Telecom Italia, SpA v. Wholesale Telecom Corp.*,
  248 F. 3rd 1109 (11th Cir. 2001) ........................................................27

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.
  Workers Int'l Union v. Wise Alloys, LLC*,
  807 F.3d 1258 (11th Cir. 2015) ........................................................12

*United Steelworkers of Am. v. Lukens Steel Co.*,
  969 F.2d 1468 (3d Cir. 1992) ........................................................26

*United Steelworkers v. Warrior & Gulf Nav. Co.*,
  363 U.S. 574 (1960) ...............................................................passim

**Statutes**

29 U.S.C. § 185……………………...……………………………………..1, 4

29 U.S.C. § 173(d) ...............................................................18

9 U.S.C. § 16(a)(1)............................................................... 2

## I.    STATEMENT OF JURSIDICTION

The Appellee, APM Terminal Mobile, LLC ("APM" or "Company") filed a complaint in Circuit Court of Mobile County, Alabama against Local 1410 alleging that members of Local 1410 were engaged in a work stoppage in violation of the no-strike, no lockout clause of the parties' collective bargaining agreement ("CBA"). APM sought an *ex parte* temporary restraining order and a declaratory judgment that the alleged work stoppage was in violation of the CBA but did not seek damages. After the Circuit Court issued a temporary restraining order, Local 1410 removed the action to the United States District Court as federal courts have original jurisdiction over claims for breach of CBAs pursuant to Section 301 of the Labor-Management Relations Act. 29 U.S.C. §185.   The temporary restraining order expired by its own terms and APM did not seek a preliminary injunction.

APM amended its original complaint to seek damages for an alleged breach of Article 4 of the CBA which contains a no strike, no lockout clause. Article 4 provides, in relevant part, that no suit for damages maybe initiated prior to certain conditions being satisfied. APM alleged that it had met the contractually required conditions to bring a suit for damages.  Local 1410 filed a motion seeking to compel arbitration of APM's damages claim for breach of Article 4.  Local 1410 maintained that the dispute over whether APM had satisfied the conditions of Article 4 for

bringing a judicial or administrative action for damages was subject to the parties' arbitration agreement as reflected in Article 5 of the CBA

On March 26, 2024, the District Court denied Local 1410 Motion to Compel Arbitration holding that the dispute that arose from an alleged breach of the parties' CBA was not arbitrable.

On April 9, 2024, the Appellant timely filed an appeal of the District Court's order denying its motion to compel arbitration pursuant to the parties' CBA. This Court has appellate jurisdiction. *See*, 9 U.S.C. § 16(a)(1)(B) and/or (C).

## II.    STATEMENT OF THE ISSUES

1.    Whether the District Court erred when it failed to compel arbitration of a dispute arising out of an alleged violation of a collective bargaining agreement with a broad arbitration clause where that arbitration clause requires arbitration of "[a]ll grievances or disputes arising from the application, interpretation or alleged violation" of the agreement?

2.    Did the District Court err when it usurped the province of the arbitrator and substituted its interpretation of the no strike, no-lockout provisions of the collective bargaining agreement?

3.    Did the District Court err when it failed to compel arbitration, because it concluded that the Company's interpretation of the disputed provision was "more sensible," even though there was no evidence that the parties agreed to exclude the dispute over whether the conditions precedent for bringing a suit for damages for violation of the no strike or lockout clause from the grievance and arbitration procedure?

4.    Did the District Court err in failing the apply the presumption favoring arbitration if the contract did not unambiguously exclude from the scope of the grievance arbitration procedure particular disputes over the application or interpretation of the contracts no-strike, no lockout provision?

3

## III.   STATEMENT OF THE CASE

### A.    Nature of the Case

This appeal presents an often litigated, but well-settled question about the enforcement of parties mutually agreed upon method for the peaceful resolution of industrial disputes that arise under a collective bargaining agreement. The Appellee, APM, brought a suit in the Circuit Court of Mobile County, Alabama seeking to enjoin an alleged work stoppage that it claimed violated the "no strike, no lockout" clause of the parties CBA. APM's complaint sought a declaratory judgment that the no strike, no lockout clause had been violated and sought a temporary restraining order halting the alleged work stoppage. APM did not seek damages for the alleged unlawful work stoppage in its original complaint filed in Circuit Court. The Circuit Court granted an *ex parte* temporary restraining order on August 29, 2023.

On August 30, 2023, the Union removed the case to the United States District Court for the Southern District of Alabama as federal courts have original jurisdiction over suits for breach of contract, such as the CBA here, pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"). 29 U.S.C. §185. APM did not move to remand the case to state court, but instead sought to amend its complaint to add a claim for damages it contends were caused by the alleged work stoppage.

After APM was permitted to amend its complaint to allege damages, the Union moved to compel arbitration of the dispute as the CBA provides a contractual commitment by parties to arbitrate all "grievances or disputes arising from the application, interpretation or alleged violation" of the CBA."  APM opposed this motion and, after briefing and oral argument, the District Court denied the Union's Motion to Compel.  The Court directed APM's counsel to draft the Order denying the Motion to Compel.  APM's counsel submitted a proposed order to the Court which the Court adopted as its own Order denying the Motion.[1]  Local 1410 timely appealed the District Court's Order.

### B.      Statement of the Facts

Local 1410 operates a hiring hall pursuant to a CBA with APM for the loading and unloading of cargo ships at its Port of Mobile terminal.  Hiring hall members do not work a set schedule for APM. Instead, APM makes daily requests to the Union for the amount and type of labor it needs, the Union posts the requests to its hiring center board, and hiring hall members individually decided whether to "shape up" and accept particular jobs. (Doc. 11-1, CBA, Article 11, PageID #210).[2]

---

[1] The District Court's Order denying the Motion to Compel is nearly identical to the proposed Order submitted by APM.
[2] Citations to the District Court record are by District Court Document number, and PACER PageID where applicable).

APM alleges that the Union engaged in a work stoppage between August 28, 2023 and August 30, 2023. (Doc. 11, Amended Complaint, ¶¶ 19-23, PageID #6-7, 30-31, PageID #9-10, 38; PageID #180).  Specifically, APM alleges that ten (10) hiring hall members engaged in a work stoppage and were sent home and "fired for the day" by the Company. (Doc. 11, Amended Complaint ¶ 23, PageID #7). APM also alleges that the Union confirmed its labor request for August 30, 2023, but that an inadequate number of longshoremen reported to the worksite. (*Id.* at ¶¶ 32-38, Page ID #10-11, Page ID#179-180). APM does not allege any work stoppages after August 30, 2023. (*Id.* at ¶ 38, PageID #180).  The Company alleges in its Amended Complaint that the alleged work stoppage between August 28-30, 2023 constituted a breach of the no-strike clause of the CBA and requests that the Court find that to be the case and award it damages.  (Doc. 11, Amended Complaint, ¶¶ 54, 57, 60, PageID #185-186).

On August 28, 2023, the day of the alleged work stoppage, APM requested a Temporary Restraining Order ("TRO") enjoining the alleged work stoppages in the Circuit Court of Mobile County. This request was granted *ex parte* the following day and hearing for a preliminary injunction was set. Subsequently, the Union removed the case to the United States District Court for the Southern District of Alabama on August 30, 2023.  (Doc. 1, Notice of Removal, Page ID #1-4).  The TRO expired by its own terms and APM did not seek to convert it into a preliminary injunction.

On November 11, 2023, APM filed its Amended Complaint, dropping its request for an injunction and adding claims for declaratory relief and damages for the alleged violation of the CBA's no-strike clause. In its Amended Complaint, APM sought declaratory relief on the following:

(i)     whether the events on August 28, 2023 violated the no-strike clause;
(ii)    whether the work stoppage that continued through the end of the workday on August 30, 2023 after the TRO was entered violated the no-strike provision and the TRO; and,
(iii)   whether the alleged justifications for the work stoppage offered by Local 1410 permit or excuse the work stoppage.

(Doc. 11, Amended Complaint, ¶ 53, Page ID #184-185).

The Union denies that it violated the CBA, engaged in a work stoppage, or directed, instructed, or advised any hiring hall member to cease performing work on the day(s) at issue. (Doc. 10, Rule 26 Report of Parties' Planning Meeting, PageID #161-162). Instead, any alleged lack of employees performing work under the CBA on the dates in question was caused by APM's own actions and not by any actions of Local 1410 or anyone acting on its behalf.

### C.     Relevant Collective Bargaining Agreement Provisions

The Parties are signatories to a CBA that provides for the final and binding resolution of disputes that arise between the parties. The CBA's "no strike or lockout" provision provides that during the term of the agreement, the employer agrees that it will not lockout the employees represented by the Union and the Union agrees not to engage in a work stoppage.

Article 4 of the CBA, the "No Strike or Lockout" provision, states in relevant part:

## ARTICLE 4. NO STRIKE OR LOCKOUT

During the term of this Agreement, the Employer agrees that there shall be no lockout of the employees represented by the Union at its operations, and the Union agrees that there shall be no strike, sympathy strike, sit down, walkout, suspension of work, curtailment or limitation of production, slowdown, picketing or any other total or partial interference with or stoppage of the Employer's operations for any cause whatsoever, including without limitation any alleged unfair labor practices by the Employer or any alleged violations of this Agreement by the Employer.

In the event of strike or other action proscribed above, the Union shall immediately take affirmative action allowed by law in an effort to prevent or terminate such violation of this Agreement

If any action occurs, which either party asserts is a violation of this Article, the party asserting the alleged violation shall not institute any judicial or administrative action against the other for damages until:

  **a.** notice of such alleged violation has been provided to the other party;
  **b.** the party receiving such notice fails to initiate and complete a prompt investigation on whether such action is a violation of this Article; and
  **c.** such party fails to undertake prompt affirmative action as required under this Article.

This provision shall not preclude either party from immediately seeking equitable relief, including injunctive relief and declaratory, to remedy any violation of this Article.

(Doc. 11-1, CBA, Article 4, PageID #189-190).

The CBA also contains an extremely broad grievance and arbitration procedure inclusive of employer and union grievances that states in relevant part:

8

## ARTICLE 5. DISPUTES AND ARBITRATION

**All grievances or disputes arising from the application, interpretation or alleged violation of this Agreement** ("grievance") shall be settled by the following procedure and there shall be no strike or other proscribed action as defined under Article 4 of this Agreement at any time.

Except as provided under the **"Step 1A (Expedited Hearing Procedure),"** the party submitting the grievance ("the grievant") shall deliver a written grievance to the authorized representative of the other party within five (5) business days of the date the grievant knew or reasonably should have known of the act or failure to act giving rise to the grievance. The authorized representative of the Employer shall be a Superintendent or a higher-level manager or official. An authorized representative of the Union shall be the Union President or a representative designated by the President. The written grievance should: (i) state the date of the alleged act or failure to act giving rise to the grievance; (ii) reasonably describe the facts giving rise to the grievance; and (iii) be signed by an authorized representative of the grievant; provided the failure to comply strictly with the foregoing requirements for a written grievance shall not relieve either party of the obligstion to process the grievance under **Article 5** through arbitration if requested. Upon submission of the written grievance, the grievant may request the opportunity to seek informal resolution of the grievance. If the grievance is not resolved by the Employer and the Union within forty-eight hours after the grievant delivers a timely written grievance to the other party, the grievance shall proceed to **Step 1**.

**Step 1. Step 1** is a hearing before a Grievance Committee consisting of two representatives of the Employer and two representatives of the Union. The hearing shall be held within a reasonable time after delivery of the written grievance. The Employer and the Union shall be bound by a unanimous decision of the Grievance Committee.

**Step 2.** If the Grievance Committee is unable to resolve the grievance at **Step 1 or Step lA** within three (3) business days after the hearing, the grievance will be referred to an Appeals Committee composed of one official from the South Atlantic and Gulf Coast District of the ILA designated by the President of the SAGCD and one official designated by the Employer. The two

9

members of the Appeals Committee shall not have been directly involved in the dispute giving rise to the grievance and shall not have served on the joint Grievance Committee under **Step 1.** The two members of the Appeals Committee shall schedule a meeting at which the parties to the grievance shall submit the grievance to the Appeals Committee. Following the meeting, the Appeals Committee shall meet in an effort to resolve the dispute. The Employer and the Union shall be bound by a unanimous decision of the Appeals Committee. If the Appeals Committee is unable to resolve the grievance within three (3) business days after the meeting of the Appeals Committee, either party may request arbitration by delivering a written request for arbitration to the other party within thirty (30) days, or such longer period as the parties may agree upon in writing, after the date of the Appeals Committee hearing. The partiesmay agree to seek non-binding mediation through the Federal Mediation and Conciliation Service prior to proceeding to arbitration, but neither party is obligated to do so. If timely requested, the parties are obligated to proceed to arbitration. If neither party timely requests arbitration in writing, the grievance shall be deemed withdrawn.

**Arbitration.** If arbitration is timely requested, the Federal Mediation and Conciliation Service shall be requested to submit a panel of seven (7) disinterested persons who are qualified and willing to act as arbitrator. From that list, the parties shall within ten (10) workdays after receipt of the list, alternatively strike the name of one individual from the list (the first strike shall be determined by the toss of a coin) until one individual remains, who shall be the arbitrator. The arbitrator shall hear the grievance as soon as practical after selection and shall endeavor to render a decision in writing within thirty (30) days after conclusion of the arbitration hearing. Employees represented by the Union shall be released from work with pay to appear as witnesses upon request by either party. The party requesting the employee shall be responsible for their pay. The decision of the arbitrator shall be final and binding on the parties. The expenses of arbitration shall be borne equally by the Employer and the Union.

The arbitrator's decision shall be limited to the interpretation and application of the terms of this Agreement. The function and purpose of the arbitrator is to resolve any disputed interpretation or application of the terms in this Agreement and to determine the relevant facts upon which the interpretation or application of the terms of this Agreement depend. The arbitrator shall not address in his or her decision any issue not submitted for arbitration. The

10

arbitrator shall not have authority to decide or to interpret this Agreement in a way that would change the intent of the parties as determined by generally accepted rules of contract construction. The arbitrator shall not render any decision that, in practical or actual effect, modifies, revises, detracts from or adds to any of the terms of this Agreement. Past practice of the parties may be considered as relevant evidence in interpreting or applying the terms of this Agreement, but may not be applied to justify or result in what is in effect a modification (whether by addition or deletion) of the terms of this Agreement. The arbitrator shall not render any decision or award merely because, in the arbitrator's opinion, such decision or award is fair or equitable.

(Doc. 11-1, CBA, Article 5, PageID #190-193).

### D.    Procedural History

As noted above, APM filed its original complaint in state court on August 28, 2023.  The Union removed the case to federal court on August 30, 2023.  The *ex parte* temporary restraining order expired by its own terms and APM did not seek a preliminary injunction.  On November 21, 2023, APM filed its amended complaint agreeing that the District Court had jurisdiction pursuant to Section 301 of the LMRA and asserting two counts in its amended complaint: a count for a declaratory judgement that *inter alia* alleged work stoppage violated the no strike or lockout clause of the CBA, and a count specifically alleging a breach of the no strike or lockout provision of the CBA and seeking damages for the alleged breach. (Doc. 11, Amended Complaint, ¶¶ 8, 51-60, PageID ##3, 16, 17). In addition, APM specifically alleged in its amended complaint that "[e]ach of the conditions precedent for instituting judicial action to recover damages under the no-strike provision has been satisfied." (*Id.* at ¶ 50, PageID #186).

11

On December 19, 2023, the Union filed its Motion to Dismiss or to Compel arbitration because APM's claim for damages under Article 4 is subject to dispute resolution under the CBA. APM opposed the Motion and on March 5, 2024, the Court held oral argument. The Court orally denied the Motion and directed APM as the prevailing party to submit a proposed order denying the Motion. (Doc. 30, Text Order Denying Motion to Dismiss and to Compel Arbitration). On March 26, 2024, the District Court issued its Order denying the Motion, adopting almost verbatim the Order drafted and submitted by APM. This timely appeal followed.

### E.    Standard of Review

The standard of review is de novo. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1266 (11th Cir. 2015); *IBEW Sys. Council U-4 v. Fla. Power & Light Co.*, 580 Fed. Appx. 868, 869 (11th Cir. 2014); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011); *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1257 (11th Cir. 2003).

## IV.   SUMMARY OF ARGUMENT

APM sued Local 1410 for damages asserting that it violated Article 4 of the CBA which provides that, during the term of the CBA, APM agrees not to lock-out employees and the Local agrees not to engage in a work stoppage.  APM alleges that Local 1410 failed to take affirmative action to prevent employees from withholding their labor over disputes regarding "work jurisdiction." APM also alleges that employees and Local 1410's "work jurisdiction" disputes "must proceed under the mandatory grievance and arbitration provision."

There is no dispute that Article 5 of the parties' agreement (entitled "Disputes and Arbitration") is a valid and enforceable arbitration agreement. Nor do the parties disagree that Article 5 sets out a broad mechanism for settlement of "all grievances or disputes" that arise between the parties concerning "the application, interpretation or alleged violation" of the CBA. If the parties are unable to settle a grievance pursuant to the agreed upon process, then Article 5 requires the grievant to submit the dispute to final and binding arbitration.  This broad grievance and arbitration procedure applies equally to disputes initiated by the Union or APM.

This appeal centers on whether Article 4 creates an exception that permitting a party to bypass the otherwise mandatory grievance-arbitration procedure found in Article 5 when it seeks to institute a judicial action for damages. Notwithstanding Article 4's express prohibition that a party "shall not institute a judicial or

administrative action against the other for damages until (a) notice has been provided, (b) the party receiving notice fails to initiate and complete a prompt investigation of whether such action is a violation and (c) such party fails to take prompt affirmative action as required under this Article," the District Court erroneously concluded that APM did not have to submit disputes over whether these conditions have been met to the grievance-arbitration procedure before instituting a suit for damages against Local 1410. In other words, APM could bypass the grievance-arbitration procedure and have a judicial or administrative forum decide all disputes under Article 4.

The District Court reached this result because it concluded that requiring APM to arbitrate disputes over the three required conditions before instituting an action for damages would "give the language in Article 4 identifying the limited circumstances where a party may circumvent the grievance and arbitration no effect or purpose." (Doc. 32, p. 12, PageID #376). This conclusion is incorrect because nothing in the Union's reading of Article 4 eliminates the right of either party to bring an action for damages after an arbitrator has decided disputes regarding the three required conditions. The District Court's reading also ignores the distinction the parties negotiated between actions for injunctive relief and actions for damages. Unlike an action for damages, a party may immediately seek injunctive relief in court without satisfying the three conditions that limit a party's right to institute a judicial

14

action for damages.  The distinction supports the reading that the parties did not intend to carve out all disputed under Article 4 from the scope of the grievance-arbitration procedure. The District Court's reading collapses the distinction between the types of actions that parties' clearly intended.

Recognizing that requiring exhaustion of the grievance-arbitration procedure before instituting an action for damages does not eliminate the right to do so, the District Court rejected this "two-step" process because it disagreed that the parties "intended for such a cumbersome and protracted procedure for resolving alleged violations of the no-strike clause." (Doc. 32, p.12, PageID #376).  Of course, Article 4's distinction between injunctive actions with no attached conditions and damages actions which are conditioned undercuts this conclusion. In any event, controlling precedent rejects inefficiency concerns as grounds for relieving a party of the obligation to arbitrate disputes, especially when there is a grievance-arbitration provision that encompasses "all grievances or disputes arising from the application, interpretation or violation" of the parties' Agreement.

Finally, the District Court erroneously failed to apply the presumption favoring arbitration. This case does not involve a contract formation dispute but only whether particular disputes are covered by the CBA's arbitration clause, which the parties agree is broadly worded. This Court's precedent requires application of the presumption favoring arbitration when the scope of an arbitration clause is

susceptible to a reading that covers the particular dispute. Here, the issue is whether Article 4 unambiguously carves out all disputes arising from its application, interpretation or violation simply because it permits a judicial action for damages once certain conditions are satisfied.  The District Court erred in not finding that Local 1410's interpretation of Article 4, that Article 5's grievance and arbitration procedure applied to disputes over the three conditions identified in Article 4, was a reasonable interpretation. Had District Court reached this conclusion, it would have been required to apply the presumption favoring arbitration. Because APM presented no "forceful evidence" rebutting this presumption, the District Court erred in not compelling APM to submit disputes over whether Local 1410 investigated and/or took affirmative action as provided under Article 4 before instituting an action for damages.

# V.    ARGUMENT

## A.    Federal Labor Policy Favors Settling Disputes Through the Parties Agreed Upon Grievance and Arbitration Procedure

The LMRA states that the "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the *application* or *interpretation* of an existing collective-bargaining agreement." 29 U.S.C. § 173(d) (emphasis added).  It is well settled that federal labor policy strongly favors settling disputes through the grievance and arbitration procedure.  Arbitration is appropriate unless a "arbitration clause is *not* susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 583 (1960)*.* To effectuate the policy in the statute that labor disputes be resolved through the methods chosen by the parties, the "Supreme Court has established a strong presumption favoring arbitrability." *Nolde Bros. v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 254 (1977); *See also Aluminum, Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp*., 991 F.2d 1545, 1549 (11th Cir. 1993) ("when a collective bargaining agreement contains an arbitration clause, there is a presumption in favor of arbitration and that doubts concerning the arbitrability of disputes should be resolved in favor of arbitration.").

If a contract contains an arbitration clause, there is presumption in favor of arbitration: "[A]n order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Technologies*, 475 U.S. 643, 650 (1986) (quoting *Warrior and Gulf*, 363 U.S. at 582-583). Moreover, "[i]n the absence of any express provisions excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude a claim from arbitration can prevail." *Warrior & Gulf*, 363 U.S. at 584-85. This presumption "furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed intent." *AT&T Technologies*, 475 U.S at 650.

Although "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," an order to arbitrate "should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. All doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574 (1960) (emphasis added). In other words, if there's ambiguity regarding whether a particular dispute is covered under the CBA's arbitration agreement, the presumption favors compelling arbitration. *See*, *IBEW Sys. Council*

*U-4 v. Fla. Power & Light Co.*, 627 Fed. Appx. 898, 903 (11th Cir. 2015)(quoting

*Granite Rock*. 561 U.S. 287 (2010).

> **B. The District Court's Order Denying the Motion to Compel Arbitration Should be Reversed because it Fails to Give Effect to the CBA's Broad and Mandatory Arbitration Agreement and Ignores the Parties' Clear Distinction Between Judicial Actions for Damages and Judicial Actions for Injunctive Relief.**

The District Court's order fails to give proper consideration to the broad and

mandatory arbitration agreement (which APM concedes is valid and enforceable) by

treating all "judicial actions" referenced in Article 4 of the CBA as exempt from the

requirement that all disputes over interpretation, application or alleged violation of

the Agreement shall be submitted to the procedure outlined in Article 5.  This overly

board reading of the limited exception for judicial actions seeking injunctive relief

ignores the parties' agreement to impose restrictions on judicial actions for damages

that are not applied to actions for injunctive relief.

1.    The District Court's opinion fails to take the first, and necessary step,

of determining whether Article 5 (the grievance and arbitration provision) excludes

the dispute over damages for an alleged violation of Article 4 from the scope of the

parties' arbitration agreement.  In Article 5, the parties agreed that "*all* grievances

or disputes arising from the *application*, *interpretation* or *alleged violation* of this

Agreement shall be settled" by the outlined procedure.  (Doc. 11-1, CBA, Article 4,

PageID #189).  APM does not dispute that resolution of its claim for damages will

19

necessarily involve an "application or interpretation" of the Agreement (i.e. the CBA); indeed, APM's claim for damages alleges that the Union breached Article 4 of the CBA.  Furthermore, APM alleges in its Amended Complaint that the Union, after receiving notice of the alleged violation failed to initiate and complete a prompt investigation on whether Article 4 was violated and failed to take prompt affirmative action as required by Article 4. (Doc. 11, Amended Complaint, ¶¶ 56-60, PageID #186). In other words, the Union breached the Article 4a.-c. conditions requiring to take certain actions in response to APM's assertion that Article 4 was being violated.

The District Court did not point to any provision in Article 5 that limits the scope of the grievance and arbitration provision.  Article 5 does not withdraw disputes involving interpretation or application of Article 4 from the authority of an arbitrator to decide. APM must concede that some Article 4 disputes (such as employee discipline for violating Article 4) are subject to the grievance and arbitration procedure.

Nor does APM argue that the grievance and arbitration procedure is limited to employee grievances. Article 5 extends to all disputes between the Union and APM. At each step of the grievance procedure, a committee consisting of Company and Union representatives meet to attempt resolution of any dispute. (Doc. 11-1, CBA, Article 5, PageID #190-193). Decisions of the joint management-union committees on resolving a dispute are binding on both parties. *Id.* If either the

grievance or appeals committees are unable to resolve the dispute, the aggrieved party may request final and binding arbitration. *Id.*

Article 5's clear inclusion of employer grievances distinguishes this case from *Friedrich v. Local Union No. 780, IUE–AFL–CIO–CLC*, 515 F.2d 225 (5th Cir. 1975). In *Friedrich*, the court found that a dispute over an alleged violation of a no-strike provision was not subject to the contract's grievance and arbitration procedure, because the procedure only contemplated employee grievances. Here, there is no dispute that APM had the right to submit a grievance alleging that the Union violated Article 4 of the contract if it had elected to do so. Had APM filed a grievance on the Local Union's alleged contract violation and the joint management-union committees (either the grievance committee or the appeals committee which includes representatives of the International) were unable to resolve the dispute, then APM had the right to refer the dispute to final and binding arbitration.

Thus, to avoid the mandatory submission of the alleged contract violation to the procedure outlined in Article 5, the District Court and APM turned to language found in Article 4 which allows a party to bypass the mandatory arbitration agreement in limited circumstances. As argued below, the district court erred in its interpretation of Article 4's narrow exception.

2.    The District Court erroneously treated all "judicial actions" instituted based on an alleged violation of the Article 4's "no-strike, no-lockout" provisions as

the same and thereby erroneous limited the mandatory scope of Article 5's grievance and arbitration procedure, exempting all "judicial actions" regarding any dispute over application or interpretation of Article 4. This reading conflicts with the language of Article 4. Article 4 provides, in relevant part, that:

> If any action occurs, which either party asserts is a violation of this Article, the party asserting the alleged violation shall not institute any judicial or administrative action against the other for damages until:
>
> a. notice of such alleged violation has been provided to the other party;
>
> b. the party receiving such notice fails to initiate and complete a prompt investigation on whether such action is a violation of this Article; and
>
> c. such party fails to undertake prompt affirmative action as required under this Article.
>
> This provision shall not preclude either party from immediately seeking equitable relief, including injunctive relief and declaratory, to remedy any violation of this Article.

(Doc. Doc. 11-1, CBA, Article 4, PageID #190-193).

By its very terms, Article 4 precludes any party from instituting a "judicial action" for damages (such as the case at bar) until certain issues are resolved or established (i.e. notice, prompt and complete investigation and prompt affirmative action). The language limiting the right to seek judicial relief for damages, however, does not apply to judicial actions seeking injunctive relief. Thus, the parties expressly treated "judicial actions for damages" differently than status quo

preserving actions seeking injunctive relief, subjecting the former to additional contractual provision requirements.

Notwithstanding the contract's differential treatment of judicial actions depending on the nature of the claims, the District Court erroneously concluded that "the remedies provision in Article IV authorizing judicial relief provides an exception to the Arbitration provision in Article V, permitting not only claims for injunctive relief but also claims for monetary damages to proceed in court." (Doc. 32, p. 12). The District Court reasoned that "any other interpretation" would give language in Article 4 "identifying the limited circumstances where a party may circumvent the grievance and arbitration process [in Article 5] no effect or purpose." (Doc. 32, p. 12) The opinion, however, offers no explanation for why treating damages actions differently than injunctive relief actions (which the parties clearly intended) gives "no effect or purpose" to any provision in Article 4.  Requiring a party to submit particular disputes about whether the conditions for instituting a damages action have been met does not eliminate the right to bring a judicial action for damages after an arbitrator has resolved such disputes.  In fact, deferring a judicial action for damages until the grievance-arbitration procedure has been exhausted best reconciles the parties' agreement to submit all disputes arising from the application or interpretation of the Agreement with a party's right to have a court of law or administrative agency determine the amount of damages if any.

23

Instead, the District Court's reading of Article 4 obliterates the parties' distinction between judicial actions seeking damages and judicial actions seeking injunctive relief and gives no effect to language precluding "judicial actions for damages" (i.e. "party asserting the alleged violation **shall not** institute any judicial or administrative action against the other for damages **until**. . .") prior to resolution of three issues or conditions. Unlike actions for injunctive relief which a party can bring "immediately," an action for damages must wait "until" certain requirements of Article 4 are satisfied. Under the District Court's reading, however, a party can "immediately" bring a judicial action for damages under Article 4 before the conditions are established by just asserting that the three requirements are satisfied. This reading gives no effect to the language that allows a party to "immediately" seek injunctive relief and language prohibiting an action for damages until three issues are resolved, which means there's no right to "immediately" bring an action seeking damages for violation of Article 4.

If the parties intended to allow "immediate" judicial actions to resolve the three issues that affect liability for damages, then they would have used the same language used for actions seeking injunctive relief. But they expressly chose not to do so. See *Blake Constr. Co. v. Laborers' International Union*, 511 F.2d 324, 328 (D.C. Cir. 1975) ("If a controversy over infringement of the no-strike clause had been regarded as so fundamental as to demand special treatment in construing the

contract, the parties expectedly would have excluded its arbitrability explicitly"); and *Howard Electric Co. v. IBEW, et al.*, 423 F.2d 164. 167 (9th Cir. 1970) ("if a dispute over the breach of a no strike clause is so fundamental as to exclude arbitration, it is reasonable to assume that the company would have negotiated an express exclusion in the agreement.").  Nor did they include any language in either Article 4 or 5 that **removes** disputes over the three conditions from the scope of the grievance-arbitration process.  Article 5 instead expresses the intent of having disputes or grievances regarding the application, interpretation or violation of the CBA resolved through the grievance-arbitration process outlined in the contract.

The parties' distinction between different types of judicial actions reflects a compromise that recognizes the need for immediate relief to preserve the status quo and claims for damages that do not require immediate relief.  This difference explains why Article 4 does not limit the right of a party to "immediately" seek injunctive relief but precludes immediate judicial actions for damages (which are not status quo preserving) until three specific issues are resolved.  Thus, disputes over the three provisions (i.e. Article 4 a.-c.) which impact liability for damages are not clearly exempt from the requirement that all grievances or disputes over interpretation and application of such provisions shall be submitted to "grievance and arbitration" before any judicial relief may be sought.

3.    The District Court's overly broad reading of Article 4's limited exception for immediate injunctive relief actions conflicts with the principle that if the agreement to arbitrate is valid and broad in scope, exceptions to arbitration should be narrowly interpreted.  The District Court assumed without support that the parties use of the term "judicial action" in Article 4 was intended to exclude **all** disputes over application or interpretation of any provision in Article 4 from the scope of Article 5's grievance and arbitration provision. However, exceptions to a broad arbitration clause should be construed narrowly and "[a]greements that require us to assume that an issue has been excluded from arbitration cannot be said to expressly exclude that issue." *United Steelworkers of Am. v. Lukens Steel Co.*, 969 F.2d 1468, 1476 (3d Cir. 1992).

4.    The District Court's alternative justification for treating all "judicial actions" under Article 4 as the same runs counter to the Supreme Court precedent that courts should give effect to arbitration agreements even if doing so is not the most efficient method for resolving disputes.  The District Court rejected the Union's position that Article 5 required APM to arbitrate disputes over whether mandatory requirements have been satisfied before initiating a judicial action for damages on the grounds that such a reading results in "a cumbersome and protracted procedure for resolving alleged violations of the no-strike provision." (Doc. 32, p. 12, PageID #376).  However, the Supreme Court has held that a piecemeal approach to

resolution does not bar arbitration of claims or defenses that the parties have agreed to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (Federal Arbitration Act "requires piecemeal resolution when necessary to give effect to an arbitration agreement."). "In such circumstances, a court must 'compel arbitration of pendant arbitrable claims . . . . even where the result would be the maintenance of separate proceedings in different forums.'" *LG Electronics, Inc. v. Wi-Lan USA, Inc.*, 623 Fed. Appx. 568, 571, 2015 U.S. App. Lexis 16062 (2nd Cir. 2015) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. at 217). See also *Jones v. Waffle House, Inc.*, 866 F.3rd 1257, 1270 (11th Cir. 2017) ("Thus 'arbitration must be ordered even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" citing *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F. 3rd 1109, 1117 (11th Cir. 2001)).

Therefore, the fact that the parties negotiated a "cumbersome" two-step process for resolution of a damages claim arising from a violation of Article 4 is not a valid basis for rejecting the "two-step" process involved in asserting such claims. Any party desiring to initiate a judicial action for damages must first submit to Article 5's dispute resolution procedure if there's a dispute over the Article 4 conditions and then, depending on how the issues are resolved, initiate an action for damages. Though this "two-step" process struck the court as inefficient and cumbersome, the language in Article 4 clearly supports it.

Collective bargaining agreements are more than just a run of the mill commercial contracts but reflect "an effort to erect a system of industrial self-government" and "the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." *Warrior & Gulf Navigation Co.*, 363 U.S. at 580-81. The parties' decision to impose restrictions on the filing of judicial actions for damages reflects the centrality of the "grievance machinery" and reinforces the narrowness of the one exception for actions seeking to preserve the status quo and forces disputes into the agreed upon grievance process. The District Court's Order simply ignores this context.

5.      Moreover, the mere mention of a judicial suit for damages in Article 4 does not clearly express an intent to exclude from the scope of the arbitration agreement disputes over whether the Article 4 conditions have been met.  *Pilot Freight Carriers Inc.*, 659 F.2d 1252 (4th Cir. 1981), a case very similar to the instant case, is illustrative of this point.  In *Pilot*, the CBA contained the clause "nothing herein shall prevent legal proceedings by the Employer where the strike is in violation of this Agreement" and criteria for determining whether a strike was authorized. *Pilot Freight Carriers*, 659 F.2d 1252 (4th Cir. 1981)*; Pilot Freight Carriers Inc. v. Local 391, IBT*, Nos. C-215-WS-72, C-219-WS-72, C-74-69-WS, C-75-76-WS., 1977 U.S. Dist. LEXIS 17827, at *4 (M.D.N.C. Jan. 19, 1977) (the clause quoted here is found in the district court decision).  Despite the mention of

legal action for violating a no strike clause, the Fourth Circuit found that disputes concerning whether the strike was authorized by the union and violated the no strike clause was covered by the arbitration clause, reasoning that:

> The company contends that the strike was authorized. IBT [the Union}, while admitting that it supported the strike, contends that the Agreement's criteria for holding it to be authorized within the context of the grievance procedure have not been satisfied. These contentions raise mixed questions of fact and interpretation of the contract which are the province of the arbitrator and not of the court.

*Pilot Freight Carriers*, 659 F.2d at 1256. Similarly, here, the threshold issues of whether APM complied with the requirement of Article 4a.-c prior to initiating the present action for damages "raise mixed questions of fact and interpretation of the contract which are the province of the arbitrator and not the court." *Id.* Both the parties' CBA and the CBA in *Pilot Freight Carriers* contain broad arbitration clauses and contemplate judicial action for no strike clause violations only *after* an arbitrator resolves any disputes about whether the contractual conditions for such an action have been satisfied.

**C.    The District Court's denial of the motion to compel arbitration should be reversed because it conflicts with the well settled presumption favoring arbitration; a presumption that can only be overcome with the most forceful evidence of an intent to exclude a particular dispute from the scope of a broad and mandatory arbitration agreement**.

The District Court's Order fails to apply the strong presumption favoring arbitration of labor disputes when the parties have agreed to arbitrate all grievances

or disputes arising from application, interpretation or violation of their collective bargaining agreement.  Though the Order refers to the presumption, it never applies it to the dispute in this case.  Had the District Court applied the presumption, then it would have compelled APM to arbitrate disputes over whether the three separate conditions governing claims for monetary damages had been satisfied.

1.    The District Court side-steps the presumption by concluding that the parties intended to create an exception to the mandatory grievance and arbitration process for all disputes and all judicial actions based on an alleged violation of Article 4's "no-strike, no lockout" provision.   After noting that the Union's interpretation that Article 4 imposes a cumbersome "two step" process for judicial actions seeking damage claims, the District Court held that "The more sensible interpretation is that the parties intended that in the limited circumstance of a breach of the no-strike provision, the non-breaching party would have the right to proceed in court." (Doc. 32, p. 12, PageID #376).

To reach this conclusion, the District Court resorts to contract construction principles, because Article 4 does not expressly state that all disputes involving application, interpretation or violation of this article are exempt from Article 5's mandatory submission requirement of all disputes to the grievance-arbitration process.  Nor does Article 5 contain any such limitation.  Instead, as noted above, Article 4 allows "judicial actions" for alleged violations but draws a distinction

between actions for damages and actions for injunctive relief. The question is whether the parties agreed to arbitrate disputes over the conditions that must be met before instituting an action for damages or whether a party can bypass arbitration and immediately bring such action. To answer this question about whether such disputes must be submitted to the grievance-arbitration procedure before instituting an action for damages, the District Court relied on contract construction principles and thus acknowledged that the CBA did not provide an unambiguous meaning.

For example, the District Court cites *Kwok v. Delta Airlines Inc.*, 578 F. Appx. 898, 902 (11th Cir. 2014) for the principle that the court must construe a contract so as to avoid illogical or unreasonable results. (Doc. 32, p. 12) But this Court resorted to this principle because it was interpreting an ambiguous term regarding Delta's SkyMiles program. *Kwok*, 578 F. Appx. At 901 ("Turning to the SkyMiles Program Rules, we first note that the plain text of the provision dealing with mileage credit creates an ambiguity as to how a mileage award will be calculated).

Likewise, in *Paladino v. Avnet Technologies*, 134 F. 3d 1054 (11th Cir. 1998) this Court used rules of construction (e.g. chose a construction that preserves the lawfulness of a contract and specific provisions control over general terms) to decide whether a plaintiff could be compelled to arbitrate a Title VII statutory claim when the arbitration agreement covered "any controversy or claim arising out of"

31

plaintiff's employment but then only allowed the arbitrator to award damages for breach of contract. The Court resorted to rules of construction because it had to choose between an interpretation that limited the scope of arbitration clause to just breach of contract claims or an interpretation that included a "potentially unlawful limitation of statutory remedies." *Id*. at 1058. Thus, the Court applied rules of construction to resolve this ambiguity and chose the interpretation that claims for breach of contract are subject to arbitration but that the Title VII statutory claims were not. *Id*. ("The interpretation thus heightens the likelihood that Avnet will be able to rely on the FAA to have at least some of its disputes with employees resolved via arbitration in the future.") Because the choice was between preserving the arbitration agreement and declaring it unlawful in its entirety, the Court found that this approach was consistent with the federal presumption in favor of arbitrability. *Id*. at 1059.[3]

In both cases, the Eleventh Circuit relied on principles of contract construction to resolve a contract ambiguity. And this is the same reason the District Court relied on contract construction principles to resolve ambiguous language in Article 4 that imposed conditions for instituting a judicial action for damages but did not impose

---

[3] The District Court was not confronted with a choice between finding the arbitration agreement in Article 5 unlawful in its entirety or limiting it scope to avoid such a result. Interestingly, the *Avnet* Court did not consider splitting claims (i.e. some subject to arbitration and others not) as problematic.

the same conditions on actions for injunctive relief.  The District Court, however, incorrectly applied these principles to choose between two reasonable interpretations of the scope of the Agreement's grievance-arbitration provision and its coverage of disputes regarding Article 4's limitations on the right to institute a judicial action for damages.  The interpretation requiring exhaustion of the grievance-arbitration procedure to resolve disputes over satisfaction of the Article 4 conditions is clearly a reasonable construction, because it reconciles the right to bring a judicial action for damages and the requirement that an arbitrator decide all disputes arising from the application, interpretation or violation of the Agreement; while also preserving the distinction between actions for injunctive relief and actions for damages.

Moreover, the interpretation that extends the grievance-arbitration provision to disputes over whether Article 4's conditions have been satisfied prior to instituting an action for damage fits best with the "context."  In *IBEW Sys. Council U-4 v. Fla. Power & Light Co.* 627 Fed. Appx. 898, 902 (11th Cir. 2015), the Panel observed that in the context of a collective bargaining agreement, grievance-arbitration is at the "very heart of the system of industrial self-government." (citing *Warrior Gulf & Navigation*, 363 U.S. at 580-581). The scope of the grievance-arbitration process should be viewed against this backdrop, namely, that the parties entered into a collective bargaining agreement with a broad grievance-arbitration procedure as a way of internally adjusting their disputes. Here, the Union's interpretation of the

grievance-arbitration provision to reach the particular disputes over Article 4's conditions is consistent with and reinforced by this context. Thus, the District Court erred to the extent it found that the Union's interpretation was an unreasonable construction of the scope of the grievance-arbitration procedure.

The District Court's rejection of Local 1410's two-step interpretation as "cumbersome and protracted" is not a valid basis for finding it unreasonable under controlling precedent.  First, this principle does not shed any light on whether the language of the contract unambiguously carves out all disputes regarding Article 4's application or interpretation; it is simply a way of choosing between two interpretations of the contract, a choice that the District Court should have refrained from making.  Second, the Supreme Court has not viewed piecemeal or cumbersome litigation as a reason to disfavor compelling arbitration when the scope of the grievance-arbitration is susceptible to an interpretation that requires submitting some disputes but not others to the grievance-arbitration process.

2.    Supreme Court precedent required the District Court to apply the presumption favoring arbitration once it determined that Article 4 did not provide a clear answer to whether disputes over the conditions applying to actions for damages are subject to mandatory grievance-arbitration under Article 5.  In *Granite Rock Co v. Int'l Bhd. of Teamsters*, the Court held that the presumption applies when an "arbitration agreement is ambiguous about whether it covers the dispute at hand."

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010); *see Dasher v. RBC Bank* (USA), 745 F.3d 1111, 1115 (11th Cir. 2014).  This Court has similarly held that "the presumption applies where there is a 'validly formed and enforceable arbitration agreement [that] is ambiguous about whether it covers the dispute at hand.'"  *IBEW Sys. Council U-4 v. Fla. Power & Light Co.*, 627 Fed. Apx. 898, 903 (11th Cir. 2015) (citing *Granite Rock); see also International Brotherhood of Teamsters, Local 413 v. The Kroger Co*. 2021 Fed. Appx. 0541, 2021 U.S. Ap. Lexis 35077 *8 (6th Cir. 2021) ("Because the arbitration agreement is ambiguous regarding coverage of the dispute at hand, we apply the presumption of arbitrability") (citing *Granite Rock*, 561 U.S. at 301).  While the District Court employed contract construction principles that aid courts in interpreting ambiguous provisions demonstrates that it simply ignored the presumption favoring arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 ("[d]oubts" about whether an arbitration clause covers an asserted dispute "should be resolved in favor of coverage.").  The presumption is "particularly applicable" in cases, like the one here, involving broad arbitration clauses.  *International Union v. Cummins, Inc*., 434 F.3d 478, 485-86 (6th Cir. 2006). The Court was required to determine whether it can be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,648 (1986). Like the Fourth

Circuit's decision in *Pilot Freight Carriers*, 659 F.2d 1252 (4th Cir. 1981), the District Court should have interpreted Article 5 of the CBA as requiring APM to submit disputes over the conditions in Article 4 a-c to the grievance-arbitration process **and** still preserved APM's right to file a judicial action for damages after the issues are resolved.

It is not uncommon for parties to exclude some claims from arbitration and not others, including claims regarding an alleged violation of the no strike clause in a CBA. *ITT World Commc'ns, Inc. v. Commc'ns Workers of Am.*, 422 F.2d 77, 81-82 (2d Cir. 1970) is confirms this point. In *ITT*, the company alleged that the Union violated the no strike clause in the CBA and brought suit under §301 of the LMRA for damages. The Union moved to compel arbitration and the District Court granted the motion. The Second Circuit in affirming the District Court decision held that if parties wanted to exclude claims for violation of the no-strike clause from arbitration it would have done so:

> We certainly cannot say "with positive assurance" that Article VI "is not susceptible of an interpretation that covers" employer, as well as employee, claims of contract violation. In addition to what we have already noted, we point out that the parties elsewhere in the contract showed that they knew how to clearly exclude a subject from arbitration when they so desired. Had the parties wanted to do the same with claims of violation of the "no-strike" clause, they could easily have been equally specific.

36

*Id*. at 81-82.  Critically, the Second Circuit also held if the parties intended to remove the issue of a violation of the no-strike clause from the grievance and arbitration machinery of the CBA, clear exclusionary language was required:

> The importance of clear exclusionary language to negate a presumption of arbitrability of a dispute about a no-strike clause was emphasized by the Supreme Court in *Drake Bakeries*, supra, 370 U.S. at 258-59 (1962):
>
>> The company earnestly contends that the parties cannot have intended to arbitrate so fundamental a matter as a union strike in breach of contract, and that only an express inclusion of a damage claim by the employer would suffice to require arbitration. But it appears more reasonable to us to expect such a matter, if it is indeed so fundamental and so basic to the company under the contract, to have been excluded from the comprehensive language of Article V if the parties so intended.

*Id*. at 82.

Thus, the Second Circuit in *ITT* concluded that "[t]he combination of a broad arbitration clause and vague or no exclusionary language has usually, since the Trilogy, led to arbitration."  *Id*.  The District Court in this case failed to properly apply these straightforward and well-settled principles when it interpreted the CBA to find that the parties intended to exclude these claims from arbitration.

3.    When there is no express provision excluding a particular issue from arbitration, to rebut the presumption of arbitrability, the party resisting arbitration must produce "the most forceful evidence of a purpose to exclude a claim from arbitration."  *IBEW Sys. Council U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898,

903-04 (11th Cir. 2015) (citing AT&T, 475 U.S. at 650) (quoting Warrior & Gulf, 363 U.S. at 584-85). APM did not provide any evidence, much less the "most forceful evidence" to exclude the conditions precedent from arbitration. And it was not the Court's role to speculate, especially without evidence, what was meant when the parties negotiated a broad arbitration clause and required that certain preconditions to bet met *before* a party could file a suit for damages. APM has not produced any evidence, much less the "most forceful evidence" to exclude this dispute from arbitration. Accordingly, AMP cannot seek to avoid its obligation to arbitrate. *See Sysco Indianapolis LLC v. Teamsters Local 135*, __ F.4th__, 7th Cir. (August 20, 2024), 2024 U.S. App. Lexis 20974 *15 ("At the end of the day, it is not our job to speculate about what [APM] conveyed or meant to convey during negotiations. It is [APM]'s responsibility to dispel any doubt by marshalling "the most forceful evidence of a purpose to exclude" the grievance from arbitration. *Warrior & Gulf*, 363 U.S. at 585. [APM] has not done so.").

## VI. CONCLUSION

In light of the CBA's broad arbitration clause and the robust federal policy favoring arbitration, APM was required to arbitrate whether the required conditions contained in Article 4 were met before it could bring a judicial or administrative action for damages. The District Court erred when it failed to order arbitration of

this dispute.  The Court should reverse the District Court and order that the case be

remanded with instructions that the dispute be referred to arbitration.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/*George N. Davies*_____
George N. Davies


/s/*Richard P. Rouco*_____
Richard P. Rouco

</div>

OF COUNSEL:

QUINN, CONNOR, WEAVER,
  DAVIES & ROUCO LLP
Two North Twentieth Street
2 – 20th Street North
Suite 930
Birmingham, AL  35203
(205) 870-9989
(205) 803-4143 (facsimile)
gdavies@qcwdr.com
rrouco@qcwdr.com

<div style="margin-left: 40%;">

*Counsel for Appellant ILA Local 1410*

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. Rule 32, the undersigned counsel for Appellant-Defendant certifies that the foregoing complies with the type-volume and typeface requirements of Fed. R. App. P. 28.1(e)(2) and 32(a)(5-6).

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A) because it contains 10,735 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman font on Microsoft Word 2010.

Date:  September 26, 2024

*/s/ George N. Davies*
George N. Davies

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 26, 2024, the foregoing was filed using the Court's ECF filing systems system serve the following counsel of record:


Anne Laurie McClurkin, Esq.
Maynard Nexsen PC
11 North Water Street, Suite 24290
Mobile, AL 36602
amcclurkin@maynardnexsen.com




                          */s/ George N. Davies*
                          George N. Davies